IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KIMBERLY R.,[1]

        Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

        Defendant.

Case No. 3:18-cv-01632-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

    Kimberly R. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The only issue in dispute on appeal is whether the Court should remand this case for further proceedings or an award of benefits. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42 U.S.C. § 405(g). For the reasons explained below, the Court grants

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

the Commissioner's motion to remand (ECF No. 20), and remands this case for further proceedings.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either a grant or a denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I.  PLAINTIFF'S APPLICATION

Plaintiff was born in February 1972, making her thirty-nine years old on December 31, 2011, the alleged disability onset date. (Tr. 87, 99.) Plaintiff has a tenth-grade education and past relevant work experience as a hospital cleaner and nurse assistant. (Tr. 34, 50-51, 76-77, 250.) In her SSI application, Plaintiff alleges disability due to fibromyalgia, irritable bowel syndrome,

depression, anxiety, migraines, urinary problems, and injuries to her hand, leg, and ankle.[2] (Tr. 87-88.)

The Commissioner denied Plaintiff's SSI application initially and upon reconsideration, and on March 26, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 15.) Plaintiff and a vocational expert ("VE") appeared and testified at a hearing held on August 25, 2017. (Tr. 44-85.) On September 26, 2017, the ALJ issued a written decision denying Plaintiff's SSI application. (Tr. 15-36.) Plaintiff now seeks judicial review of that decision.

## II. THE SEQUENTIAL ANALYSIS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* at 724-25. The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the

---

[2] "[T]he earliest an SSI claimant can obtain benefits is the month after which [she] filed [her] application[.]" *Schiller v. Colvin*, No. 12-cv-00771-AA, 2013 WL 3874044, at *1 n.1 (D. Or. July 23, 2013) (citation omitted). Plaintiff filed her SSI application on April 16, 2014. (Tr. 15.)

burden at any of those steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the sequential analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954 (citations omitted).

## III. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 15-36.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 16, 2014, the day she filed her SSI application. (Tr. 18.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "[D]epression; post-traumatic stress disorder [('PTSD')]; fibromyalgia; generalized anxiety disorder; obesity; migraine; status post left ankle open reduction internal fixation and bilateral ankle osteoarthritis; foot strain; [and] schizophrenia." (Tr. 18.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 19.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, subject to these limitations: (1) Plaintiff can never crawl or climb ladders, ropes, or scaffolds, (2) Plaintiff can engage in no more than occasional balancing, stooping, kneeling, crouching, and climbing of ramps and stairs, (3) Plaintiff can engage in no more than occasional "use [of] foot controls," (4) Plaintiff must avoid concentrated exposure to vibration and hazards, (5) Plaintiff needs to be "limited to low stress work, that is, work where she is required to make few work-related decisions or tolerate few changes in her workplace setting," (6) Plaintiff "can

PAGE 4 – OPINION AND ORDER

have no public contact," and (7) Plaintiff "can have at most occasional, superficial contact with coworkers." (Tr. 21.) At step four, the ALJ concluded that Plaintiff was unable to perform her past work. (Tr. 34.) At step five, the ALJ concluded that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, including work as a table worker, touch-up screener, and semiconductor die loader or wafer breaker. (Tr. 35.)

## DISCUSSION

The only issue in dispute is whether the Court should remand for further proceedings or an award of benefits. The Court has serious doubt about whether Plaintiff is disabled, and therefore the Court grants the Commissioner's motion to remand for further proceedings.

## I. APPLICABLE LAW

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citation omitted). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014). The credit-as-true standard is met if the following conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* at 1020 (citations omitted).

Even when the credit-as-true standard is met, the district court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1021.

## II. ANALYSIS

### A. Waiver

As a threshold matter, the Commissioner argues that Plaintiff made "no effort to prove that the present action satisfies" the credit-as-true standard, and therefore "Plaintiff has waived any . . . argument" that she satisfies that standard. (Def.'s Br. & Mot. Remand at 6.) On the contrary, in her opening brief Plaintiff (1) detailed how the ALJ allegedly erred in rejecting significant, probative evidence, (2) argued that if the evidence in question were "fully credited," the ALJ would be required to find Plaintiff disabled based on the VE's testimony, and (3) argued that the "record has been developed and further proceedings would serve no useful purpose." (Pl.'s Opening Br. at 16, 20.) The Court finds that Plaintiff specifically and distinctly raised the issue in her opening brief, and therefore did not waive her argument that the credit-as-true rule applies here. *Cf. Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (explaining that "issues which are not specifically and distinctly argued and raised in a party's opening brief are waived").

### B. Part One

In this appeal, Plaintiff argues that the ALJ erred by (1) failing to provide clear and convincing reasons for discounting the opinion of Plaintiff's treating physician, Steven LaTulippe, M.D. ("Dr. LaTulippe"); and (2) failing to provide legally sufficient reasons for discounting Plaintiff's symptom testimony. (Pl.'s Opening Br. at 12, 16-20.) The Commissioner "concedes that . . . the ALJ erred in evaluating evidence in determining that Plaintiff was not

PAGE 6 – OPINION AND ORDER

disabled." (Def.'s Br. & Mot. Remand at 5.) Thus, Plaintiff has met part one of the credit-as-true standard. *See Lara M. v. Saul*, No. 6:18-cv-00880-SB, 2019 WL 6045585, at *3 (D. Or. Nov. 15, 2019) ("There is no dispute that the ALJ failed to provide legally sufficient reasons for rejecting significant, probative evidence. . . . Therefore, Plaintiff has met part one of the credit-as-true standard.").

### C. Parts Two and Three

The Court does not address whether Plaintiff satisfies parts two and three of the credit-as-true standard because the Court concludes that the record creates serious doubt as to whether Plaintiff is disabled. *See Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) ("[W]e need not determine whether the [credit-as-true] requirements are met because, even assuming that they are, we conclude that the record as a whole creates serious doubt as to whether Claimant is, in fact, disabled."). The following evidence creates serious doubt as to whether Plaintiff is disabled:

- Plaintiff testified that her daily activities and hobbies involve caring for her four children, and that she does not find it "difficult to meet all of their needs." (Tr. 50, 61-62, 263, 266.)

- May 31, 2012: Plaintiff's provider noted that she exercises "2-3 times a week." (Tr. 320.)

- September 7, 2012: Plaintiff reported that she "took a little vacation" during which she "met a friend at a bar" and was "left . . . in charge of her [friend's] 3 children for five days." (Tr. 338.)

- September 18, 2012: Plaintiff reported that her "anxiety level ha[d] come down and she d[id] not feel at risk for panic attacks." (Tr. 336.)

- February 28, 2013: Plaintiff's provider noted that she was recently "four wheeling in the woods." (Tr. 333.)

- October 24, 2013: Plaintiff's provider dismissed Plaintiff from the clinic because she "missed too many appointments." (Tr. 326-28.)

- April 3, 2014: Plaintiff "denie[d] feeling severely depressed or anxious." (Tr. 395.)

- May 21, 2014: Plaintiff's provider noted that her anxiety was "relieved by medication." (Tr. 370.)

- June 20, 2014: Plaintiff's provider observed that Plaintiff was able to "watch[] [a] baby all night," and stated that Plaintiff had "no difficulty with fine manipulative tasks," "[n]o anxiety," and "no depression." (Tr. 361-63.)

- July 21, 2014: Dr. LaTulippe noted that Plaintiff's "[d]epression [is] relieved by medication," Plaintiff was "able to go outside of her home and participate in yard activities," Plaintiff was "having very few and only mild panic attacks," Plaintiff stated she was "functioning 'better than I have for years,'" and Plaintiff "denie[d] having any severe panic attacks or any severe flashbacks of her emotional trauma." (Tr. 352.)

- July 14, 2015: Plaintiff reported that "her anxiety and fibromyalgia symptoms have been fairly well controlled." (Tr. 474.)

- August 5, 2015: Plaintiff stated that she injured herself while "walking barefooted in the river on large and small rocks that often shifted and caused her to slip multiple times." (Tr. 481.)

- September 1, 2015: Dr. LaTulipe stated that Plaintiff has "no difficulty with fine manipulative tasks." (Tr. 489.)

- September 11, 2015: Plaintiff's provider stated that Plaintiff "has a history of inconsistent attendance and no communication prior to missing visits." (Tr. 455.)

- September 16, 2015: Plaintiff reported that her pain medication "greatly improved her function," she was "able to accomplish her household chores with relative ease," her back pain "actually improved since she has become more physically active," and she had not had "any panic attacks since taking propranolol." (Tr. 508.)

- October 14, 2015: Dr. LaTulippe noted that Plaintiff was "feeling physically and emotionally well," Plaintiff was "feeling emotionally 'better than [she has] felt in years,'" Plaintiff "continue[d] to have a very good benefit from [her medication] for anxiety and PTSD," propranolol "work[ed] very well" for Plaintiff's "social anxiety and panic disorder," propranolol "control[ed]" Plaintiff's "panic attacks really well," and Plaintiff had "no difficulty accomplishing all ADLs and desired activities." (Tr. 498.)

- November 12, 2015: Plaintiff reported she "has been feeling quite well overall," she was "feeling emotionally better," she "has had no difficulty accomplishing daily activities," and her "depression and anxiety have been well controlled." (Tr. 503.)

- December 15, 2015: Plaintiff reported that her "anxiety has been well controlled" and she had "very good control" of her ankle pain, which "tend[e]d to worsen with prolonged walks beyond about 4-5 miles." (Tr. 520.)

- January 18, 2016: Plaintiff denied "having any . . . severe social anxiety," expressed "a desire 'to get out there and start walking again as soon as the rain stops,'" and reported that her fibromyalgia, migraines, and irritable bowel syndrome had "been well controlled." (Tr. 513.)

- February 17, 2016: Plaintiff's provider noted that Plaintiff had "been walking for exercise," and that Plaintiff's PTSD, depression, anxiety, fibromyalgia, irritable bowel syndrome, and ankle pain had "been well controlled." (Tr. 537.)

- March 17, 2016: Plaintiff reported that she was "feeling well," she was "staying active and . . . able to easily accomplish all ADLs," her "medications combined with counseling [were] working well for her" PTSD, and she was not suffering from "any severe depression or anxiety." (Tr. 531.)

- May 12, 2016: Plaintiff reported that "she and her husband had been walking daily for exercise," her "ankle pain ha[d] been well controlled," she was "tolerating all of her usual activities well, including the daily walking for exercise," and her "anxiety and depression are well controlled." (Tr. 552.)

- June 8, 2016: Plaintiff informed her provider that she was "feeling fairly well overall," she was "walking 3-4 miles a day," she was "functioning very well emotionally," she had "reasonably good control of her depression and anxiety," her irritable bowel syndrome and fibromyalgia were "well controlled," and she had not suffered "any severe panic attacks" or "social phobia." (Tr. 570.)

- August 4, 2016: Plaintiff informed her provider that she was "still walking for exercise," she "tolerates [her] exercise very well," she had "good control of her

anxiety and depression," and she had "been taking care of her grandchildren and . . . socializing with her church family members during services." (Tr. 581.)

- September 29, 2016: Plaintiff stated that she had "been walking about 2 miles a day for exercise . . . and tolerates this well," her anxiety had "been very well controlled," she had not suffered from any "severe anxiety or depression," and her "'seizures' ha[d] completely resolved since her anxiety has been well controlled." (Tr. 597.)

- October 26, 2016: Plaintiff reported that she was "functioning very well recently," she had "been staying quite active since she is able to walk with very little pain now," she "had no difficulty accomplishing all of her usual activities," she was "again back to walking for exercise," and she was "feeling emotionally well, having no uncontrolled depression or anxiety." (Tr. 609.)

- November 22, 2016: Plaintiff's provider noted that Plaintiff was "feeling fairly well," Plaintiff's "current dosing regimen is very effective in controlling her ankle pain," Plaintiff was "walking about 2 miles a day for exercise and . . . tolerating this well," and Plaintiff's "anxiety, depression, and PTSD are well controlled." (Tr. 603.)

- January 19, 2017: Plaintiff reported that her pain "continue[d] to be very well controlled," she "had no worsening of her anxiety," she was "sleeping well," and she was not "having any hallucinations or delusion, or an increase in nightmares associated with past traumatic events." (Tr. 619.)

- March 15, 2017: Dr. LaTulippe stated that Plaintiff's ankle pain had "been very well controlled overall," Plaintiff was "feeling well physically," Plaintiff reported

"having a good benefit from [a medication] for her fibromyalgia, migraine headaches, persistent insomnia, and ankle pain," Plaintiff was "very pleased with the benefit she ha[d] been receiving from her medications," Plaintiff "continue[d] to have excellent control of her anxiety and depression," and Plaintiff reported that her social phobia "'hasn't been too bad'" and she "feels emotionally the best she has felt in many years." (Tr. 800.)

- April 17, 2017: Plaintiff reported that her "anxiety and depression are well controlled" and she was "still functioning pretty well." (Tr. 795.)

- May 15, 2017: Plaintiff stated that she had "good control of her ankle pain," she was "still walking for exercise," she "had a very good response" to her anti-anxiety medication, her "anxiety is very well controlled," she had "been hearing voices for years . . . [but] the voices are now largely suppressed," she had not suffered "any extreme social phobia," and she was "again attending church each Sunday, [which was] 'helping a lot.'" (Tr. 781.)

- June 13, 2017: Plaintiff reported that she was "feeling physically very well . . . with only mild [ankle pain] exacerbations occasionally on days when she does a lot of activity," her anxiety was "now fairly well controlled," and she was "function[ing] very well on Depakote." (Tr. 776.)

- July 12, 2017: Plaintiff informed her provider that she was "still walking for exercise and . . . had fairly good exercise tolerance," she had "been functioning very well since resuming Depakote," she was "feeling emotionally well," and she was not "having any recent severe hallucinations, depression, anxiety, palpitations, or any headaches or severe muscle pain." (Tr. 770.)

- August 10, 2017: Plaintiff reported that her ankle had "been feeling fairly well," her mental health medications had "been working well for her," she had "been very functional [and] able to accomplish all of her regular activities without difficulty," she had been "eating and sleeping well," and she had not been "having migraines" or "having any emotional stressors at th[at] time." (Tr. 765.)

In light of the evidence detailed above, the Court has serious doubt about whether Plaintiff is disabled, and therefore grants the Commissioner's motion to remand for further proceedings. *See Cochran v. Berryhill*, No. 3:17-cv-00334-SB, 2017 WL 6626322, at *7 (D. Or. Dec. 28, 2017) ("The Court agrees that a remand for further proceedings is necessary because the record contains cause for serious doubt as to whether Plaintiff is, in fact, disabled."); *Romo v. Berryhill*, No. 16-8655, 2017 WL 8181142, at *1 (C.D. Cal. Nov. 1, 2017) ("Because there are serious doubts as to whether Plaintiff is disabled, the Court vacates the ALJ's decision and remands the case on an open record for further proceedings."); *Hann v. Comm'r Soc. Sec. Admin.*, 219 F. Supp. 3d 1053, 1056 (D. Or. 2016) ("[B]ecause the record as a whole creates serious doubt as to whether Plaintiff is, in fact, disabled, the Court remands for further proceedings.").

## CONCLUSION

For the reasons stated, the Court GRANTS the Commissioner's motion to remand (ECF No. 20), and remands this case for further proceedings.

**IT IS SO ORDERED.**

DATED this 24th day of February, 2020.

*/s/ Stacie F. Beckerman*
_____
STACIE F. BECKERMAN
United States Magistrate Judge